MOLLIE HODGE, ADMX., *v.* R. L. HAMILTON.*

(*Nashville.* December Term, 1926.)

Opinion filed May 9, 1927.

1. **DAMAGES. Concurrent negligence. Recklessness of defendant, and ability of plaintiff to prevent an injury.**

It would be monstrous and inhuman, to hold, that a driver of a motor driven car (automobile) seeing a pedestrian approaching, with his head down and seemingly intoxicated, where such driver has ample time to bring his car to a stop, and sufficient space to steer it, to avoid a collision, can nevertheless recklessly and wantonly run such car over the pedestrian and escape liability, upon the theory that the pedestrian, was guilty of such negligence as would bar a recovery. (Post, pp. 406-411.)

Citing: Huddy on Automobiles (7th Ed., 1924), secs. 473, 499, 506, 507, 577; 13 R. C. L. 294; Hennessey v. Taylor, 189 Mass., 583, 4 Am. and Eng. Ann. Cas., 397; Gerhard v. Ford Motor Co., 155 Mich., 618; 119 N. W., 904, 20 L. R. A. (N. S.), 232; Todd v. R. R., 135 Tenn., 104; R. R. v. Roe, 118 Tenn., 612. Cooley on Torts, 674.

2. **SAME. Same. Trial. Directed verdict.**

In a case of this kind the right to a directed verdict must be tested by the evidence offered by the plaintiff. (Post, p. 405.)

3. **SAME. Same. Reckless injury of defendant.**

If defendant discovered the negligence of the plaintiff in time by the use of ordinary care to prevent the injury, and did not make use of such care for the purpose, he is justly chargeable with reckless injury and cannot rely upon the negligence of the plaintiff as a protestation. (Post, p. 410.)

---

*Headnotes 1. Trial, 38 Cyc., p. 1576; 2. Motor Vehicles, 28 Cyc., p. 49; 3. Motor Vehicles, 28 Cyc., p. 49; 4. Motor Vehicles, 28 Cyc., p. 37.

---

FROM HARDIN.

---

Appeal from the Circuit Court of Hardin County.— HON. N. R. BARHAM, Judge.

H. P. Wood and Shelton & Harbert, for plaintiff in error.

Ross & Ballew, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

This is an action to recover damages for the wrongful death of plaintiff's intestate, Arthur Hodge. The deceased was knocked down and run over by the Dodge automobile of the defendant, and died within a few hours without ever having regained consciousness.

Upon the conclusion of the introduction of testimony the trial court directed a verdict for the defendant. Upon appeal the judgment of the trial court was affirmed by the Court of Appeals. The lower courts were of the opinion that the negligence of the parties was concurrent, thus barring a recovery.

The allegations of the declaration as to negligence are as follows:

"Plaintiff avers that, at the time the injuries complained of happened, the defendant and the party in control and operating said car were guilty of careless management of the automobile in question, and of gross negligence in the premises, as follows:

"First—Defendant permitted his nephew, Robert L. Hamilton, Jr., a child about nine years old, and incapable and inexperienced in driving and handling such cars, to drive the said car, and said child was, at the time of the commission of the injuries complained of, driving the car or holding the steering wheel, and was being instructed and taught by the defendant, who was sitting by, how to drive and what to do.

"Second—The road, at the place, was wide and there was plenty of room to the east of the intestate to permit the car to pass, but while the intestate was quietly walking along the road, on his own side of the road, on the west side, the car was improperly driven and directed to the wrong side of the road, to the side occupied by the intestate, the reasons being either that the car was in a defective condition or because it was carelessly, negligently and recklessly driven, or both, and because of these acts, the intestate was run over, his body badly mangled and the injuries produced death in a few hours thereafter."

At this point it should be said that the defendant insists that the automobile was turned to the right when he and the driver thereof observed the deceased, but that the deceased jumped in front of it, and that the accident was, therefore, unavoidable.

In a case of this kind the right to a directed verdict must be tested by the evidence offered by the plaintiff. The facts established by the plaintiff's evidence are as follows: The accident occurred on Sunday afternoon, May 3, 1925, on a macadamized road in Hardin county; this road is sixteen feet wide at the point where the accident occurred and was nearly straight; there are no sidewalks along said road; it was daylight and the sun was shining; the road runs north and south; the deceased was walking south and the automobile was traveling north; the automobile was being driven by a twelve-year-old nephew of the defendant, but defendant was seated by his side; the boy had been driving the automobile occasionally for about a year, but was only permitted to do so when accompanied by the defendant; the automobile was running at not exceeding fifteen miles per hour; deceased was twenty-four years of age, strong, robust, and

neither his sight or hearing were impaired; deceased was walking perfectly straight, with his head down, occupying the west four feet of the highway, thus leaving twelve feet of the road for the automobile to travel on; that the automobile was on the west side of the road and coming straight toward deceased; that it made little noise; that the horn of the automobile was not blown or any effort made to warn the deceased of its approach; that the automobile did not change its course a particle, nor was any effort made to stop it until it struck the deceased.

We are unwilling to hold that a pedestrian is guilty of such negligence, as a matter of law, as to bar a recovery when, in broad daylight, he is walking south on a sixteen foot macadamized road, with his head down, occupying the west one-fourth thereof, and the operator of an automobile traveling in the opposite direction, with a space of twelve feet in which to pass the pedestrian, runs his automobile on the left hand side of the road and into him, without giving any warning. This is a question to be determined by the jury upon proper instructions.

Mr. Huddy, in his Work on Automobiles (7th Ed., 1924), discusses the question here involved as follows:

Sec. 473. ". . . But there is no imperative duty resting upon pedestrians or upon travelers in a horse-drawn vehicle on public highways to keep a continuous lookout for automobiles, under penalty that, if they fail to do so and are injured, contributory negligence will be conclusively imputed to them . . ."

Sec. 499. "Persons under physical disability, such as aged, crippled, intoxicated, blind or deaf persons are favored by the law. Moreover, their conduct as bearing on the question of contributory negligence, may not be so carefully scrutinized by the courts. The operator

of a motor vehicle, as is the driver of any other vehicle, is bound to exercise the degree of care which an ordinarily prudent man would exercise under the same circumstances to avoid injury to a pedestrian who is lacking in the capacity of a normal man, such as an intoxicated, aged, blind, or deaf person, or a person otherwise infirm. As has been said, 'It is a rule of law that one driving or operating a vehicle is bound to consider the lack of capacity of those in his way to care for their own safety, when such incapacity is known or should have been known by him, and the law exacts greater care toward those who are unable to care for themselves, as children, blind persons, and in fact drunken persons, when such incapacity is known or should have been known by the one driving or operating a vehicle.' . . ."

Sec. 506. "Where a person is standing still in the street and does not observe the approach of an automobile, it is the duty of the driver to turn out so as to avoid striking him. Especially is this so, when there is ample room for the auto driver to pass the pedestrian in safety. He is not permitted to run him down and then claim that such pedestrian was guilty of contributory negligence in not seeing and avoiding the automobile . . ."

Sec. 507. "The situation with reference to pedestrians on a village or city street is somewhat different than as to pedestrians traveling along a rural highway. In the latter case, the pedestrian does not generally have the benefit of a sidewalk or other path especially devoted to his needs. As in other cases of fellow travelers, it is the duty of the driver of an automobile to exercise reasonable care to avoid injury to one walking along the highway. If the foot traveler is oblivious to the approach

of the vehicle, the driver should give a warning of 'his approach . . .''

"Foot travelers have equal rights upon the highway with the drivers of vehicles, and the usual statement of their obligation is that they must use what amounts to reasonable care in the particular circumstances. It may be that as a matter of law reasonable care requires a pe destrian who is about to be overtaken by an automobile to step to one side and allow it to pass, so that it will not have to turn out and go around him. And if the road, or the traveled portion, is so narrow that one or the other must get outside of it in order that the car may pass, doubtless this should be done by him who is on foot, because he can do it more easily. But, where the beaten track is wide enough for several vehicles to pass, there can be no hard and fast rule that pedestrians must get completely outside of the highway or off the traveled portion of it . . .''

Sec. 577. ''. . . When one is standing in the street in a place where he has a right to be, or is walking along the highway, he can properly assume that the driver of of a motor vehicle will not run him down, but will avoid contact with him. And he may also assume that the driv- er of an approaching machine will give a signal of warn- ing so that an accident may be avoided . . .''

In 13 Ruling Case Law, 294, it is said:

"One may be guilty of contributory negligence in failing to avoid an approaching vehicle where he sees it in time to do so.; as where he sees such a vehicle but proceeds on his way without paying any further atten- tion to it or to his surroundings, or where he attempts to cross ahead of it upon nice calculations of the chances of injury, but the mere fact that he sees the vehicle does

not necessarily render him guilty of contributory negligence as a matter of law."

In *Hennessey* v. *Taylor,* 189 Mass., 583, 4 Am. & Eng. Ann. Cas., 397, it is said:

"There is no imperative rule of law which has been called to our attention generally requiring a pedestrian where lawfully using the public ways to be continuously looking or listening to ascertain if autocars are approaching, under the penalty that upon failure to do so, if he is injured, his negligence must be conclusively presumed."

The foregoing statement was subsequently approved in *Gerhard* v. *Ford Motor Co.,* 155 Mich., 618, 119 N. W., 904, 20 L. R. A. (N. S.), 232.

We are further of the opinion that, in view of the foregoing evidence, and the admissions of the defendant, the court should have charged the jury that if they found that the deceased was guilty of negligence, but further found that the defendant had actual knowledge of the danger or peril of deceased and could have avoided the accident, by the exercise of ordinary care, and did not do so, plaintiff would be entitled to recover.

Both the defendant and his nephew saw the deceased in time to have stopped the automobile, or to have steered it to the right, thereby avoiding the accident. Upon this question we quote from the testimony of the defendant as follows:

"Q. After you passed Mr. Cupples house you saw some man coming up the road meeting you? A. Yes.

"Q. Was there anything about the man coming meeting you that attracted your attention? A. At the start there wasn't, afterwards there was.

"Q. What? A. He wasn't walking steadily, in his shirt sleeves and bareheaded attracted my attention, I

watched him as I thought he was in an intoxicated condition.

"Q. You judged that from his appearance? A. Yes.

"Q. As he came nearer to you what then occurred? A. As soon as I discovered his condition I said to the boy 'lookout for that man, looks like he is drinking, pull out.'

"Q. · On which side of the road generally was he walking? A. At that time he was on the west side of the runway of the road."

In *Todd* v. *Railroad,* 135 Tenn., 104, it is said:

"If during a period at or before the infliction of injury adequate for preventive action by defendant he had actual knowledge of plaintiff's danger and failed to exercise ordinary care to avoid it, all authority is to the effect that plaintiff may be awarded relief; for then the negligence of defendant takes the color of willfulness."

In *Railroad* v. *Roe,* 118 Tenn., 612, this court quoted approvingly from Cooley on Torts, 674, as follows:

"Where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of injury. The fact that one has put himself in a place of danger is never an excuse for another purposely or recklessly injuring him. Even the criminal is not out of the protection of the law, and is not to be struck down with impunity by persons. If, therefore, the defendant discovered the negligence of the plaintiff in time by the use of ordinary care to prevent the injury, and did not make use of such care for the purpose, he is justly chargeable with reckless injury,

and cannot rely upon the negligence of the plaintiff as a protestation.''

The distinction between mere negligence on the one hand and wantonness and recklessness on the other are too well established by the decisions of this and other courts to require elaboration.

It would be monstrous and inhuman to hold that a driver of an automobile, seeing a pedestrian approaching with his head down and seemingly intoxicated, where he has ample time to bring his automobile to a stop and sufficient space to steer it to the right and thus avoid a collision, can nevertheless recklessly and wantonly run his car over the pedestrian and escape liabiliy upon the theory that the pedestrian was guilty of such negligence as would bar a recovery. Such a situation does not relieve a railroad company where the injured party was a trespasser upon its track, and certainly it should not be given effect in a case of this character where the injured party was where he had a right to be, and where, according to the plaintiff's theory, the automobile was on the wrong side of the road, the driver thereof saw the deceased in time to have avoided the accident, but did not attempt to do so or to warn deceased of his perilous situation, and where deceased neither saw or heard the approaching automobile in time to get out of its way.

In our opinion, the case should have been submitted to the jury. For the reasons stated herein, the judgment of the Court of Appeals will be reversed and the case remanded to the circuit court for a new trial.